IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 15 CR 330 |
| | ) | |
| Alan Gold | ) | |
| | ) | |
| Defendant | ) | |

MEMORANDUM OPINION AND ORDER

Alan Gold is a former investment advisor who pled guilty in January of 2016 to swindling his clients—several of whom were friends, and six of whom were elderly individuals whose "harrowing" testimony was presented at Gold's sentencing—out of savings cumulatively approaching two million dollars. *United States v. Gold*, 854 F.3d 945, 946 (7th Cir. 2017). Gold pretended to invest these funds for his clients' benefit, lulling them into a false sense of security with bogus paperwork concocted for that purpose, while in reality, he used his clients' money to pay his own gambling debts and other personal expenses. *See id.* Although Mr. Gold has more than two years remaining on his within-Guidelines, 75-month sentence, he seeks an order compelling his immediate release on compassionate grounds under the First Step Act based on his fear of becoming ill with COVID-19, or, alternatively, a recommendation that the BOP place

him in home confinement for the remainder of his sentence. I deny his motion for the following reasons.

A district court is authorized to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) when it finds that "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The defendant bears the burden of establishing his entitlement to relief under this provision. *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

Mr. Gold argues that the public health crisis caused by the current COVID-19 pandemic, coupled with his heightened individual susceptibility to the disease based on his age—he is 65—and certain medical conditions from which he claims to suffer satisfy the statutory criteria above. Mr. Gold is understandably concerned about COVID-19, which has claimed upwards of seventy thousand lives in the United States,[1] and which indeed poses a particular threat to older adults, to individuals with certain preexisting medical conditions (especially when untreated), and to people living in densely populated environments.[2] Nevertheless, I conclude that he has not

---

[1] *See* COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, available at https://gisanddata.maps.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (last accessed May 6, 2020).
[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed May 6, 2020).

established his entitlement to relief based on his individual circumstances.

To begin, Mr. Gold is currently housed at FCI Terre Haute, where there have been no confirmed cases of COVID-19.[3] While this certainly does not mean that no one at the facility has contracted the virus,[4] there is no evidence that it has had a significant impact on inmate health at the facility, or that the situation is, or is likely to become, out of control. And while the confinement conditions that Mr. Gold's attorney describes[5]—including multiple daily "head counts" with inmates lined up shoulder-to-shoulder, dormitory-style sleeping arrangements accommodating a dozen inmates in a cell, and the absence of hand sanitizer for inmate use—do suggest that it may be difficult

---

[3] *See* https://www.bop.gov/coronavirus/ (last accessed May 6, 2020).
[4] The inadequacy of testing at FCI Terre Haute and throughout the United States has been widely reported. *See, e.g.,* Abby Goodnough, Katie Thomas, and Sheila Kaplan, "Testing falls Woefully Short as Trump Seeks an End to Stay-at-Home Orders," https://www.nytimes.com/2020/04/15/us/coronavirus-testing-trump.html, N.Y. TIMES, April 15, 2020 (last accessed May 5, 2020). Heather Good, "Union Reps Raise Concerns About Safety Inside Federal Prison Amid Outbreak," WTHI-TV 10, March 26, 2020, available at https://www.wthitv.com/content/news/Union-reps-raise-concerns-about-safety-inside-federal-prison-amid-outbreak-569141811.html (last accessed May 5, 2020); Laura Santhanam, "The reason U.S. COVID-19 numbers aren't higher? Not enough tests," PBS NEWS HOUR, March 12, 2020, available at https://www.pbs.org/newshour/health/the-reason-u-s-covid-19-numbers-arent-higher-not-enough-tests (last accessed May 5, 2020).
[5] I note that Mr. Gold has not substantiated the facts he asserts with an affidavit or records from FCI Terre Haute. His attorney cites the "emergency nature" of his motion as the reason he has not offered medical or disciplinary records; but that does not excuse the absence of any evidence of Mr. Gold's claimed medical conditions and the conditions of his confinement.

to observe certain of the CDC's guidelines for protecting against sickness, others—such as frequent hand-washing and limited face-touching—are presumably within reach, even while living in close quarters.[6] Moreover, it remains the case that the majority of people exposed to the coronavirus suffer only mild to moderate to symptoms, with many showing no symptoms of COVID-19 at all. In other words, while potential exposure to the virus that causes COVID-19 is not something to take lightly, it is not tantamount to a death sentence for any incarcerated individual aged 65 or older, nor does it "warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Miller*, No. 18-CR-30034, 2020 WL 2093370, at \*2 (C.D. Ill. May 1, 2020).

In connection with the latter observation, I note that the medical issues that Mr. Gold claims render him especially vulnerable to COVID-19—pre-emphysema, high blood pressure, and high cholesterol—are common and do not appear to be among those the CDC has identified as significant risk factors.[7] Moreover, Mr. Gold's representation that the BOP has "improperly discontinued his

---

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last accessed May 6, 2020).

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (identifying "chronic lung disease or moderate to severe asthma" and "serious heart disease" as among the serious underlying conditions that increase COVID-19 related risks, especially when left untreated) (last accessed May 5, 2020).

[hypertension and cholesterol] medication about a month ago on account of a clerical error" not only lacks evidentiary support, it implicitly concedes that Mr. Gold has generally received treatment for these conditions throughout his period of custody. In short, Mr. Gold has not persuaded me either that he is especially likely to become seriously ill with COVID-19, or that FCI Terre Haute would be unable to meet his medical needs if he does contract the illness.

As I have previously observed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Allegra*, No. 15 CR 243, DN 232 at 7 (N.D. Ill. Apr. 13, 2020), citing *United States v. Eberhart*, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). Indeed, even courts that have expressly taken a "liberal view" of the Sentencing Commission's policy statements have denied motions brought by inmates housed in facilities with no evidence of widespread transmission and whose individual risk factors were shared by "a host of other prisoners." *United States v. Pinto-Thomaz*, No. 18-CR-579 (JSR), 2020 WL 1845875, at *2 (S.D.N.Y. Apr. 13, 2020). That is the case here, as Mr. Gold's age and the medical issues he describes surely do not set him apart from many other individuals in custody.

5

Nor do the factors set forth in 18 U.S.C. § 3553(a) militate in favor of early release. While it may be that Mr. Gold is no longer in a position to prey upon individuals who entrusted him with their life savings, the term of incarceration I imposed represents the sentence I deemed adequate to punish him for the financial ruin he caused his victims and to promote respect for the law, among other factors. I am not convinced that ordering his immediate release with nearly half of that sentence remaining (the BOP lists his projected release date as June 11, 2022) is justified by his claim of rehabilitation or his ability to return to his previous home upon release. The significant time that remains of Mr. Gold's prison sentence, as well as his failure to substantiate his claimed medical issues (none of which was reported in his presentence investigation report, which, to the contrary, states that he "does not suffer from any chronic ailments, and has no history of severe illness or injury"), distinguish him from the defendants in the cases he cites. *See, e.g.* *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *4 (N.D. Ill. May 4, 2020) (granting compassionate release to diabetic inmate who had previously suffered a heart attack and whose projected release date was "just seven scant weeks" from the court's decision date); *United States v. Manning*, No. 15 CR 50007 (N.D. Ill. Apr. 20, 2020) (granting reduction amounting to "six or seven days off" the sentence of inmate suffering from multiple chronic

6

conditions including "high blood pressure, paroxysmal atrial fibrillation and tachycardia, and deep vein thrombosis").

Finally, Mr. Gold insists that but for a minor infraction he committed in June of 2019, the BOP would have granted his request for immediate release to home confinement. Setting aside that the one-page email he points to does not establish that the BOP would otherwise have found him eligible for home confinement, one might reasonably view the infraction itself—Mr. Gold was caught smoking a cigarette—as casting doubt on his claim of serious "respiratory issues." At all events, the BOP evaluated Mr. Gold's request on the facts before it. Neither his suggestion that the BOP should have ignored the cigarette infraction, nor his speculation that the outcome would have been different if it had, persuades me to urge the BOP to revisit its decision.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 6, 2020